Robert PARAMORE, Petitioner,

v.

Gary FILION, Superintendent of Coxsackie Correctional Facility, Respondent.

No. 02 Civ. 8362(VM).

United States District Court, S.D. New York.

Aug. 13, 2003.

Order Granting Reconsideration September 4, 2003.

---

Robert S. Dean, Center for Appellate Litigation, New York City, for Petitioner.

1. The factual summary that follows derives primarily from Paramore's Memorandum of Law in Support of Petition Pursuant to 28 U.S.C. § 2254 for a Writ of Habeas Corpus, dated October 16, 2002, with accompanying appendix containing the trial transcript, and Paramore's Reply Memorandum of Law in Support of Petition Pursuant to 28 U.S.C.

## DECISION AND ORDER

MARRERO, District Judge.

Petitioner, Robert Paramore ("Paramore"), incarcerated in a New York State correctional facility following his conviction of offenses involving sexual misconduct with a child, filed a petition (the "Petition") for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Respondent Gary Filion (the "State"), Superintendent of the New York State Coxsackie Correctional Facility, opposes the Petition. For the reasons discussed below, the Petition is DENIED.

## I.  BACKGROUND [1]

Paramore was convicted on August 9, 1999 by a trial court in New York State Supreme Court, Bronx County (the "Trial Court"), sitting without a jury. A summary of the facts surrounding his conviction follows.

When Quanisha Player ("Quanisha") was five years old she was sexually abused by Paramore. At that time, Quanisha lived with her mother, Georgette Player ("Georgette"), her two younger brothers, and her grandfather. Georgette and Paramore, who began dating on October 17, 1997, were sexually involved until January, 20, 1998. Georgette and Paramore began spending the night at each other's homes within two weeks of the start of the relationship, and Georgette's children would occasionally stay over at Paramore's house.

Georgette voluntarily placed Quanisha and her brothers in the custody of her

§ 2254 for a Writ of Habeas Corpus, dated February 28, 2003, and from Respondent's Affidavit in Opposition, dated February 18, 2003, and Respondent's Memorandum of Law, dated February 2003. Except where specifically referenced, no further citation to these sources will be made.

sister, Miami Player ("Miami"), on April 10, 1998, after Miami noticed physical bruises on Quanisha, which were admittedly caused by Georgette. Allegations of sexual misconduct against Quanisha by Paramore came to light in June 1998 when Quanisha told Miami about the abuse. Quanisha had attempted to tell Georgette about the abuse on one previous occasion, but apparently her attempt was ignored.

On June 8, 1998, Quanisha was interviewed twice at the emergency room of Jacobi Hospital by Margarita Colon ("Colon"), a social worker at the hospital. During these interviews, Quanisha told Colon about specific incidents of sexual abuse committed by Paramore. A few days later, Dr. Hoffman–Rosenfeld, a qualified expert in the field of child sexual abuse, performed a through physical exam of Quanisha but found no signs of sexual abuse in the genital or anal area. However, Dr. Hoffman–Rosenfeld explained at Paramore's trial that it is possible for a child to have been sexually abused without any physical signs remaining after two months.

At the close of the prosecution's case-in-chief, Paramore moved to dismiss the charges against him on the ground that the prosecution had adduced insufficient evidence to prove each and every element of the offense beyond a reasonable doubt. Paramore's motion was denied on July 2, 1999. The Trial Court convicted Paramore of one count of sexual conduct against a child in the first degree and one count of endangering the welfare of a child. On September 27, 1999, Paramore was sentenced to a term of imprisonment of from ten to twenty years for sexual conduct against a child in the first degree, to be served concurrently with a term of imprisonment of one year for endangering the welfare of a child.

In his appeal to the New York Supreme Court, Appellate Division, First Department (the "Appellate Division"), Paramore argued that the prosecution's evidence was insufficient, as a matter of law, to prove that he was guilty of sexual conduct against a child in the first degree. On November 13, 2001, the Appellate Division unanimously affirmed Paramore's conviction. See People v. Paramore, 288 A.D.2d 53, 732 N.Y.S.2d 410 (1st Dep't 2001). The New York Court of Appeals denied leave to appeal on March 26, 2002. See People v. Paramore, 97 N.Y.2d 759, 742 N.Y.S.2d 620, 769 N.E.2d 366 (2002).

In the instant Petition, Paramore raises the same claim he asserted before the Appellate Division, that his due process rights under the United States Constitution were violated by his conviction of a criminal offense where the state allegedly failed to prove beyond a reasonable doubt each and every element of the offense. The relevant penal statute provides that:

A person is guilty of a course of sexual conduct against a child in the first degree when, over a period of time not less than three months in duration: (a) he or she engages in two or more acts of sexual conduct, which includes at least one act of sexual intercourse, deviate sexual intercourse or aggravated sexual contact, with a child less than eleven years old.

N.Y. Penal Law ("NYPL") § 130.75 (McKinney 2003). At trial, and in the Petition, Paramore does not dispute the fact that he engaged in more than two acts of sexual conduct with Quanisha. He denies, however, that there is enough evidence to prove the requisite period of time for a first degree conviction—"no less than three months". Id. However, the Trial Court found, and the Appellate Division affirmed, that the prosecution's evidence was sufficient to support a finding that a

number of instances of egregious sexual abuse lasting at least three months occurred.

Three principal pieces of evidence support the Appellate Division's determination that a reasonable trier of fact could have found that the sexual abuse committed by Paramore lasted at least three months: (1) Quanisha was vulnerable to sexual advances by Paramore from October 17, 1997 until April 10, 1998, the time period during which Paramore and Georgette were dating and Quanisha lived with her mother; (2) Quanisha testified that the abuse happened "more than one time," went on for a "long time," and stopped happening only when she was placed in her aunt's custody in April, (Transcript of the trial conducted on June 30, 1999—August 9, 1999 ("Tr." or "Transcript") at 24); and (3) Quanisha testified that the abuse would happen when it was both "hot and cold" outside, (*Id.* at 24–25). *See Paramore,* 732 N.Y.S.2d at 410. The Appellate Division reasoned that Quanisha's testimony about a change in weather, the frequency and the length of time of the sexual abuse, as well as the seven-month period during which Paramore had access to Quanisha, supported the inference that the abuse lasted for at least three months: "The evidence, viewed as a whole, warranted the conclusion that defendant's course of sexual conduct against a child extended 'over a period of time no less than three months in duration.'" *Id.* (citing NYPL § 130.75).

In his Petition, Paramore argues that Quanisha's testimony concerning the time-frame of the incidents can not be understood to support the required three-month element of his conviction due to the prosecutor's inconsistent and vague use of pronouns such as "it" and "this." Likewise, Paramore asserts that a six-year-old's testimony that the abuse commenced after a "short time" but lasted for a "long time,"

as well as when it was "hot and cold out," is far too vague for a court to consider sufficient evidence of the time period of his sexual misconduct. In raising these concerns, Paramore argues that the inconsistent testimony, coupled with the vague nature of Quanisha's time-frame, is legally insufficient to prove beyond a reasonable doubt that the sexual conduct occurred for at least three months.

## II. DISCUSSION

### A. STANDARD OF REVIEW

Paramore's Petition is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(d)(1), which provides, in pertinent part, that an

> application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a state court shall not be granted with respect to any claim that was adjudicated on the merits in a state court proceeding unless the adjudication of the claim resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.

The Appellate Division decided Paramore's case on the merits, stating in its opinion that the "verdict was based on legally sufficient evidence and was not against the weight of the evidence." *Paramore,* 732 N.Y.S.2d at 411.

Since the case was decided on the merits by the Appellate Division, this Court is constrained in its determination by the "contrary to" clause of 28 U.S.C. § 2254, which allows the writ to be granted only where the "state court arrives at a conclusion opposite to that reached by [a controlling federal court] on a question of law or if the state court decides a case differently

from [a controlling federal court] on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 413, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). Moreover, since the Second Circuit has not interpreted the "unreasonable application" clause to mean "incorrect" or "erroneous," *id.* at 410–11, 120 S.Ct. 1495; *see also Jones v. Stinson*, 229 F.3d 112, 119–21 (2d. Cir.2000), the writ cannot issue simply by reason of the state court's conclusion being incorrect; a habeas petition can only be granted if the state court unreasonably applied the correct governing principle to the prisoner's case. *See Williams*, 529 U.S. at 413, 120 S.Ct. 1495. Thus, the only role for the habeas court is to determine whether the Appellate Division reasonably applied the governing legal principle consistent with federal law and the evidence viewed as a whole.

## B. *SUFFICIENCY OF THE EVIDENCE*

The Due Process Clause of the Fourteenth Amendment of the United States Constitution mandates that a defendant in a criminal case be convicted only upon proof beyond a reasonable doubt of every element necessary to constitute the crime with which he is charged. *See Jackson v. Virginia*, 443 U.S. 307, 315, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *In re Winship*, 397 U.S. 358, 364, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970). To find a due process violation, the Court must determine that the record before the trial court was "so totally devoid of evidentiary support" that a reasonable fact-finder could not have found the defendant guilty beyond a reasonable doubt. *Bossett v. Walker*, 41 F.3d 825, 830 (2d Cir.1994) (quoting *Mapp v. Warden, N.Y. State Correctional Inst. for Women*, 531 F.2d 1167, 1173 n. 8 (2d Cir.1976). This determination is based on all of the evidence and considered in the light most favorable to the prosecution. *See id.* at

319–20, 99 S.Ct. 2781; *Young v. Abrams*, 698 F.2d 131, 135 (2d Cir.1983)). Since the habeas court reviews only the sufficiency of the evidence in the record and neither the credibility of the witness nor the correctness of the state court's ruling, the burden on the petitioner challenging the sufficiency of the evidence is "very heavy." *Means v. Barkley*, No. 98 Civ. 7603, 2000 WL 5020, at *3 (S.D.N.Y. Jan. 4, 2000) (quoting *Knapp v. Leonardo*, 46 F.3d 170, 178 (2d Cir.1995)); *accord Unites States v. Rosa*, 11 F.3d 315, 337 (2d Cir.1993) ("[A] challenge to the weight of the evidence or the credibility of a witness is a matter for argument to the jury ... Thus, the defendant who makes a sufficiency challenge bears a heavy burden.")

Paramore claims that the evidence demonstrating when his sexual conduct with Quanisha commenced is too vague, and therefore insufficient, for a rational trier of fact to conclude that the sexual conduct occurred for "a period of time no less than three months in duration," as required by NYPL § 130.75. Specifically, Paramore argues that Quanisha's testimony that the sexual conduct occurred when it was "hot and cold" outside and "after a short time" but for a "long time" is too vague to meet the State's burden of proof. (Tr. at 24.)

Paramore points to Quanisha's answers to a specific line of prosecutorial questioning to demonstrate that her testimony does not support the Appellate Division's finding. When the prosecutor inquired, "Did it happen soon after Robert started sleeping over your house or a long time after Robert started sleeping over your house?" (*Id.* at 23–24.) Quanisha answered, "A long time." (*Id.* at 24.) Paramore argues that this question referred to the abuse generally and that therefore, since Quanisha testified that the abuse generally did not begin for a long time after he started staying over, there is in-

sufficient evidence that the abuse occurred over a three-month period.

The Appellate Division, on the other hand, found that "a fair reading of the child's testimony, in context, establishes that the sexual conduct began very early in that period and continued until it ended." *Paramore*, 732 N.Y.S.2d at 410. Paramore claims that this interpretation manipulates the trial transcript and that only a post-hoc construction could justify such a reading.

In its opposition to the Petition, the State argues that the "it" at issue during this line of questioning referred to a specific type of sexual incident and that it was only that specific type of incident that began a long time after Paramore started sleeping over. However, the Court finds that, in the context of this particular dialogue, there is ambiguity concerning the "it" in question. That the following question reads, "And did this start happening after Robert started sleeping over your house," to which Quanisha replied, "Yes", as well as the subsequent questions and answers which more clearly refer to incidents of abuse generally, support an understanding that the "it" and "this" referred to relate to more than one incident, and possibly to the abuse generally. (*Id.*) Had this uncertainty been the only testimony in evidence for the proposition that the abuse of Quanisha occurred over a long period of time, the Court would have grounds for substantial concerns about the sufficiency of the evidence.

However, Quanisha, on various other occasions during her testimony, makes clear that the sexual abuse happened over a "long time" and that it began a "short time" after Paramore started sleeping over. Later in his questioning, the prosecutor asked, "Did Robert stay over a long time or a short time before he started touching you?" Quanisha responded "A short time." (*Id.* at 26.) In addition, Quanisha testified that the abuse happened for "A long time." (*Id.* at 24.) Quanisha further explained that the abuse did not stop until she moved in with her aunt. (*Id.*) This further evidence serves to clarify the previous ambiguous testimony and to elucidate Quanisha's understanding of the time span during which the abuse occurred.

Moreover, there is further substantiating evidence that the abuse spanned temporal changes—"when it was hot and cold out." (*Id.* at 24.) As the Appellate Division found, "the child's reference to a change in weather during the course of conduct may be reasonably interpreted as indicating a change of seasons, not a change of weather from day to day." *Paramore*, 732 N.Y.S.2d at 410. The Court agrees with the Appellate Division that such an inference, even taking account of the climatological evidence submitted by Paramore indicating that hot and cold temperatures can be detected within a given season, is reasonable.

In opposition to this testimony, Paramore argues that a six-year-old's reference to "hot and cold" weather and the abuse lasting a "long time" (Tr. at 24) is far too vague for a court to rely upon when establishing a critical element of the offense, especially given the climatological data provided to the court. In an attempt to sustain this position, Paramore draws the Court's attention to various instances where Quanisha's testimony was illogical or inconsistent. For example, Quanisha testified on two occasions that sexual conduct occurred at least once at her house, and later testified that Paramore did not do anything to her at her own home. In addition, Quanisha testified that Paramore started touching her "after a short time", but also testified that Paramore came over to her house for "not a long time" and her

"mommy dated [Paramore] for not a long time." (*Id.* at 26.)

However, the fact that Quanisha's testimony included some inconsistencies and was not date-specific as to when the sexual abuse began is not fatal to the weight of the evidence, even though it speaks to an essential element of the crime. *Wilcox v. People of State of New York,* No. 97 Civ. 199, 1998 WL 59465, at *4 (finding discrepancies and gaps in children's testimony did not render the children incompetent as witnesses) (N.D.N.Y. Feb. 11, 1998); *Bodine v. State,* 737 P.2d 1072, 1074 (Alaska App.1987) (when determining the sufficiency of inconsistent testimony, the trial court is allowed considerable latitude, especially when the witness is a young child); *Litzkuhn v. Clark,* 85 Ariz. 355, 339 P.2d 389, 392 (1959) ("[I]t is the duty of the trial judge who has permitted a child to be sworn as a witness, at any time to change his mind upon due occasion therefor, to remove the child from the stand and to instruct the jury to disregard his testimony"). The *Wilcox* court held that "[w]hile there was inconsistency between the testimony of the children and their prior statements as well as gaps in their recollections, these issues pertain to the question of their credibility, which is for the trier of fact to evaluate in determining the weight to give the children's testimony." 1998 WL 59465, at *4 (citing *Kentucky v. Stincer,* 482 U.S. 730, 743, n. 13, 107 S.Ct. 2658, 96 L.Ed.2d 631 (1987)).

In this case, the Trial Court paid careful attention to Quanisha's status as a child witness: "[I]n dealing with a child witness, the Court recognizes two very important facts: One is that evaluating a child witness is not something that we do every day ... but also, and equally important, is the understanding that children express themselves differently than adults ... [child testimony] is not the same as an adult's

testimony." (Tr. at 330.) Therefore, it is not for this Court to determine the credibility of Quanisha's testimony—the trial court found her testimony credible and the presence of certain inconsistencies does not persuade this Court that her testimony should be discounted or that the Trial Court's judgment should be questioned.

Finally, Paramore faults the prosecution for not corroborating Quanisha's testimony by trying to elicit a specific time-frame for the abuse by using Thanksgiving, Christmas or Quanisha's birthday as reference points. However, the fact that the prosecution did not ask about holidays does not detract from evidence that is already sufficient. *See Bear Stops v. U.S.,* 204 F.Supp.2d 1209, 1215 (D.S.D.2002) ("[T]here was more than sufficient evidence to support [the] conviction beyond a reasonable doubt ... since Petitioner did not demonstrate that a jury would have reached a different result in a separate trial.")

In sum, although the specific date upon which the sexual conduct began cannot be definitively determined, the evidence is legally sufficient to support the conviction. There is testimony that the sexual conduct began a "short time" after Paramore gained access to Quanisha in October 1997, occurred for a "long time" thereafter and ended when she was placed in her aunt's custody in April 1998. (*Id.* at 26.) This testimony is corroborated by the fact that Paramore had access to Quanisha during the intervening seven months and that he does not deny that multiple incidents of his egregious sexual conduct with Quanisha did occur in that interval. In addition, the three-month period found to be applicable in this case is supported by Quanisha's testimony that the sexual conduct spanned a change in weather, which was interpreted by the Appellate Division to support an inference of seasonal changes. *Paramore,*

732 N.Y.S.2d at 410. When this evidence is considered as a whole, it reasonably supports a finding that the sexual conduct occurred for at least three months. Viewing the evidence in a light most favorable to the prosecution, it is clear that the record is not totally devoid of evidentiary support, nor is the Trial Court's finding contrary to, or an unreasonable application of, clearly established federal law. *See Bossett,* 41 F.3d at 830.

Moreover, the sufficiency of the evidence in this case is underscored by the fact that the persuasive testimony is from a child, from whom gathering more exact details as to when the sexual conduct precisely began is an unreasonable expectation and a formidable hurdle. Any person who suffers from some type of traumatic experience, adult or child, may have difficulty relating that experience in a chronological, coherent and organized manner. *See* Kermit V. Lipez, *The Child Witness in Sexual Abuse Cases in Maine: Presentation, Impeachment, and Controversy,* 42 Me. L.Rev. 283, 345 (1990). Dr. Anne Meltzer, a psychologist specializing in child sexual abuse, testified at Paramore's trial that:

> children who are six years of age are developmentally unable to understand the concept of time in an abstract manner. At the age of six, children are cognitively thinking in very concrete terms so everything to them can seem like yesterday, and tomorrow can represent the whole future. As a result, it is sometimes difficult to pinpoint dates and times, especially for children who have been abused.

(Tr. at 113–14.) That the imprecise testimony in this case comes from a sexually abused child of tender years makes it logical, and necessary, for a rational fact-finder to make factual findings by drawing reasonable inferences from that testimony. Although Paramore argues that Dr. Melt-

zer's testimony discredits Quanisha's status as a witness, as indicated above, this Court will not, on habeas review, upset the Trial Court's determination that Quanisha was a credible witness, or question the weight the Trial Court afforded her testimony.

The Court notes, moreover, that the Trial Court's acceptance of Quanisha's testimony was not unreasonable. Although the issue of vague child testimony is not one that has been considered in great depth by the Second Circuit, courts generally recognize that child witnesses present special challenges when testifying in sexual abuse cases and that these challenges must be recognized and accommodated. *See People v. Calloway,* 176 Misc.2d 161, 672 N.Y.S.2d 638, 642 (N.Y.Co.Ct.1998) (noting that young victims of . . . [sexual] molestations may have no practical way of recollecting, reconstructing, distinguishing or identifying by specific incidents or dates all or even any such incidents). In many cases that include allegations of sexual abuse against a child, the difficulties for children in relating days and times of events and in explaining delays in disclosing the abuse are recognized. *See People v. Morris,* 61 N.Y.2d 290, 473 N.Y.S.2d 769, 461 N.E.2d 1256, 1260 (1984) (instructing a court reviewing evidence of sexual abuse to consider the following when determining whether a more specific date could have been provided in the indictment: "(1) the age and intelligence of the victim and other witnesses; (2) the surrounding circumstances; and (3) the nature of the offense, including whether it is likely to occur at a specific time or is likely to be discovered immediately."); *see also State v. Bortner,* No. 02 CA 008189, 2003 WL 21509000, at *3, *7 (Ohio Ct.App. 9 Dist.July 2, 2003) (recognizing that expert testimony concerning the occurrence of delayed disclosure and the difficulties

children have relating time was important for the jury to consider).

Because child victims can present novel complications when testifying, state courts, including those in New York, have made special accommodations for the "vagaries of children's memories, the ways in which children recall events, and how children articulate their recall," *Calloway*, 672 N.Y.S.2d at 643, as well as for the children's young age and inexperience with the courts, *State v. Senquiz*, 68 Conn.App. 571, 793 A.2d 1095, 1106 (2002). *See also* Jessica Liebergott Hamblen & Murray Levine, *The Legal Implications and Emotional Consequences of Sexually Abused Children Testifying as Victim–Witness*, 21 Law & Psychol. Rev. 139 (1997). In some states, including New York, children's uncorroborated sworn testimonies are legally sufficient to convict a defendant on criminal charges. *See, e.g.*, NYPL § 130.16. A majority of states have adopted evidentiary rules that no longer require children to demonstrate competence before testifying. *See, e.g.*, Fed. R.Evid. 601. Courts have also held that "leading questions may be permitted of a child victim in a sexual abuse case so that the child's testimony can be clarified or expedited if the child is apparently unwilling to testify freely." *People v. Cuttler*, 270 A.D.2d 654, 705 N.Y.S.2d 416, 417 (3rd Dep't 2000). In addition, child hearsay statutes have been adopted by a number of jurisdictions to "ensure that a hearsay statement of a child-victim of abuse can be admitted into evidence without causing further trauma to the child." Carol Schultz Vento, Note, *Validity, construction, and application of child hearsay statutes*, 1999 WL 729012, 71 A.L.R.5th 637 (1999); *Bugh v. Mitchell*, 329 F.3d 496, 501 (6th Cir.2003) (holding that state court decisions allowing admission of child victim's hearsay statements were not con-

trary to clearly established Supreme Court precedent so as to warrant habeas relief).

Furthermore, when a rational trier of fact deems a sexually abused child to be "vulnerable," a motion may be granted authorizing the child to testify via closed circuit television, which is a qualified exception to the Sixth Amendment's confrontation clause requiring defendants to face their accusers. *Maryland v. Craig*, 497 U.S. 836, 110 S.Ct. 3157, 111 L.Ed.2d 666 (1990) (holding that the confrontation clause does not categorically prohibit a child witness in a sexual abuse case from testifying against a defendant at trial outside defendant's physical presence by one-way closed circuit television); *Jelinek v. Costello*, 247 F.Supp.2d 212, 240 (E.D.N.Y.2003)(holding that a state court's decision to use a two-way, closed circuit television during testimony of a child witness was reasonable); *see* N.Y.Crim. Proc. § 65.20 ("when the court has determined that a child witness is a vulnerable child witness, ... [and] the court finds that placing the defendant and the child witness in the same room during the testimony of the child witness will contribute to the likelihood that the child witness will suffer severe mental or emotional harm, ... the defendant [will] remain in the courtroom during the testimony of the vulnerable child witness.")

At Paramore's trial, the Trial Court permitted Quanisha to testify by closed circuit television, relying on a combination of its own observations, the testimony of two witnesses, and the record to determine that Quanisha would suffer "severe mental or emotional harm if required to testify in defendant's presence." *Paramore*, 732 N.Y.S.2d at 411. In addition, the Trial Court permitted the State to ask Quanisha leading questions. (*See* Tr. at 21–22) ("I am overruling the objection [to leading] and obviously because of the age of the

witness I will permit certain leading of the witness . . .")

Considering the role that trauma may play on a witness's ability to testify in a precise manner, particularly when a child is involved, and the importance of protecting child witnesses and enabling them to testify, the Court deems it essential to accept reasonable accommodations employed by the Trial Court to facilitate vague child-victim testimony, provided that no prejudice to either party is established. Given the accommodations that have already been formally recognized in courtrooms in the context of allowing hearsay, leading questions, and closed circuit testimony, it is a small yet logical step for a rational finder of fact under the circumstances prevailing in this case to be allowed reasonable latitude to draw inferences from a child's testimony unavoidably reflecting some imprecision, especially when the testimony is from a child victim of repeated sexual abuse and when any fair inferences that may be drawn from such testimony are supported by sufficient corroborating evidence.

This approach has been adopted by other courts. In *Wilcox,* 1998 WL 59465, at *1, the trial court rejected a habeas petitioner's challenge to the sufficiency of evidence underlying his conviction, which was based on the testimony of child witnesses who were unable to recall specific dates but could cite to identifiable, finite moments such as a birthday, spring fair and trip to a lake. In another case, the Sixth Circuit affirmed a habeas petitioner's conviction despite the fact that the child victim nodded her head affirmatively or negatively rather than answer questions verbally, and the victim described the abuse to a social worker using an anatomically correct doll. *See Bugh,* 329 F.3d at 502. Similarly, in *State of Minnesota v. Combs,* 504 N.W.2d 248, 250 (Minn.Ct.App.1993), the court affirmed a conviction for second degree sexual conduct despite some vagueness in the child victim's testimony where the victim testified to the essential element, that she touched the defendant's genitals, and the victim's brothers corroborated this testimony.

In a case particularly similar to the one at hand, the testimony of an eleven year-old victim was sufficient to link the defendant to crimes of aggravated child molestation and aggravated sexual battery, even though the victim had difficulty recalling the date of the incident and there was no corroborating medical evidence to support the vague testimony. *See Grooms v. State,* 261 Ga.App. 549, 583 S.E.2d 216 (2003). In *Grooms,* the defendant challenged the sufficiency of the evidence against him, claiming that the only witness to the crime was an "impressionable eleven-year-old child" who was unreliable because she had difficulty recalling the date of the incident. *Id.* at 218. However, the court in *Grooms* held that the victim's testimony that the molestation "hurt" was sufficient to prove the physical injury element of the charge and that no medical evidence was required as corroboration. *Id.* Furthermore, the victim and her mother were living with the defendant, which was adequate corroboration for the court to claim that whatever inconsistency or credibility concerns existed were issues for a jury to resolve. *Id.* at 219.

In short, on the record in this case, Paramore had access to Quanisha for seven months, there were admitted multiple incidences of sexual conduct, and there is testimony, which the Trial Court apparently found credible, that these incidents began a short time after Paramore became involved in Quanisha's life and lasted for a long time, supporting an inference that the sexual misconduct continued for at least

three months. Therefore, based on the available evidence, evaluated as a whole and in context, the Court accepts the Appellate Division's finding that it was reasonable for the Trial Court to conclude that Paramore's sexual abuse of Quanisha occurred for the requisite period of time sufficient to sustain Paramore's conviction of sexual conduct against a child in the first degree.

### III. ORDER

For the reasons set forth above, it is hereby

**ORDERED** that Paramore's petition for habeas corpus relief is DENIED.

As Paramore has failed to make a substantial showing of the denial of a constitutional right, the Court declines to issue a certificate of appealability. *See* 28 U.S.C. § 2253. Pursuant to 28 U.S.C. § 1915(a)(3), the Court certifies that any appeal of this order would not be taken in good faith. *See Coppedge v. United States,* 369 U.S. 438, 445, 82 S.Ct. 917, 8 L.Ed.2d 21 (1962).

The Clerk of the Court is directed to close this case.

**SO ORDERED.**

### *DECISION AND ORDER*

Petitioner, Robert Paramore, ("Paramore") filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. By Decision and Order, dated Aug. 13, 2003 (the "Decision"),[1] the Court denied Paramore's petition. Paramore now moves for reconsideration of the Court's Decision, pursuant to Fed.R.Civ.P. 59(e) and 69(b)(6) and Local Civil Rule 6.3, requesting that the Court reconsider the discreet issue of whether an appeal of the Decision to the

Second Circuit Court of Appeals would be taken in good faith. In its Decision, the Court indicated that such an appeal would not be taken in good faith, citing *Coppedge v. United States,* 369 U.S. 438, 445, 82 S.Ct. 917, 8 L.Ed.2d 21 (1962), and Paramore asks the Court to order that this final sentence of the penultimate paragraph be stricken from the Decision.

■ Paramore asserts that the standard applicable to a district court's grant of a certificate of appealability is distinct from a the standard for certification that an appeal would not be taken in good faith. *Compare* 28 U.S.C. § 2253 and 28 U.S.C. § 1915(a)(3). The Court agrees that the applicable standards are distinct. A certificate of appealability is granted upon a petitioner's substantial showing of the denial of a constitutional right—in other words, if the issues raised in a petition are "debatable among jurists of reason" or "are adequate to deserve encouragement to proceed further." *Miller–El v. Cockrell,* 537 U.S. 322, 123 S.Ct. 1029, 1039, 154 L.Ed.2d 931 (2003) (internal quotations omitted). On the other hand, an appeal not taken in good faith is one deemed objectively frivolous, *see Coppedge,* 369 U.S. at 445–446, 82 S.Ct. 917, and "[a]n appeal is frivolous where it lacks an arguable basis in law or fact." *Tavarez v. Reno,* 54 F.3d 109, 110 (2d cir.1995).

■ In this case, the Court, for the reasons set forth in the Decision, believes there is no merit in either Paramore's intended appeal or in the application for a certificate of appealability Paramore intends to bring before the Second Circuit. However, upon reconsideration, the Court does not deem the theory underlying Paramore's claim to be frivolous and therefore

---

1. The Decision is reported at *Paramore v. Filion,* No. 02 Civ. 8362, 2003 WL 21939700 (S.D.N.Y. Aug. 13, 3002).

retracts its statement concerning the bad faith nature of any appeal taken from the Decision. For the reasons set forth above, it is hereby

**ORDERED** that Paramore's motion for reconsideration is granted; and it is further

**ORDERED** that the final sentence of the penultimate paragraph in the Court's Decision stating, "Pursuant to 28 U.S.C. § 1915(a)(3), the Court certifies that any appeal of this order would not be taken in good faith," be stricken from the Decision.

**SO ORDERED.**