*This opinion is subject to administrative correction before final disposition.*

# United States Navy–Marine Corps
# Court of Criminal Appeals

Before
KISOR, GANNON, and FLINTOFT
Appellate Military Judges

_____

**UNITED STATES**
*Appellee*

**v.**

**Joseph A. MAESE**
Chief Personnel Specialist (E-7), U.S. Navy
*Appellant*

**No. 202400146**

_____

Decided: 23 October 2025

Appeal from the United States Navy-Marine Corps Trial Judiciary.

Military Judge:
Kimberly J. Kelly

Sentence adjudged 25 January 2024 by a general court-martial convened at Naval Station Mayport, Florida, consisting of officer and enlisted members, sentenced by military judge alone. Sentence in the Entry of Judgment: reduction to E-1, confinement for 36 years, and a dishonorable discharge.[1]

---

[1] Appellant was awarded six days of confinement credit.

For Appellant:
*Ms. Tami L. Mitchell*
*Lieutenant Commander Christopher C. McMahon, JAGC, USN*

For Appellee:
*Commander John T. Cole, JAGC, USN*
*Lieutenant Lan Ngyuen, JAGC, USN*

Judge FLINTOFT delivered the opinion of the Court, in which Senior Judge KISOR and Judge GANNON joined.

———————————

**This opinion does not serve as binding precedent, but may be cited as persuasive authority under NMCCA Rule of Appellate Procedure 30.2.**

———————————

FLINTOFT, Judge:

Appellant was convicted, contrary to his pleas, of one specification of child endangerment in violation of Article 119b, Uniform Code of Military Justice (UCMJ);[2] one specification of sexual abuse of a child involving sexual contact; and two specifications of rape of a child[3] who has not attained the age of 12 years in violation of Article 120b, UCMJ.[4]

Appellant asserts three assignments of error (AOE):

I. Was the evidence factually insufficient to sustain Appellant's Article 120b, UCMJ convictions?

II. Were Appellant's trial defense counsel ineffective when the defense failed to conduct any cross-examination of the child forensic investigator who conducted Sierra's interview, failed to call its own expert to counter the

---

[2] 10 U.S.C. § 919b.

[3] After findings were announced, the military judge dismissed one specification of rape of a child (Specification 3 of Charge II) conditioned upon completion of appellate review in which the finding of guilt under Specification 4 of Charge II is upheld. Pursuant to a request from Appellant, the convening authority approved the deferral of the reduction in grade to E-1 and automatic forfeitures until Entry of Judgment and further approved the waiver of automatic forfeitures for a period of six months from the date of the Entry of Judgment. Entry of Judgment at 2.

[4] 10 U.S.C. § 920b.

Government's expert witness, did not identify and explore deficiencies and inconsistencies in Sierra's child forensic interview (CFI) that made it forensically unsound, and by withdrawing an objection to the entry of Prosecution Exhibit 11 (portions of the CFI) as a prior consistent statement?

III. Was the Appellant's sentence to 30 years of confinement for specification 4 of Charge II inappropriately severe?[5]

We find no prejudicial error and affirm.

## I. BACKGROUND

Appellant and Ms. Mike were married and had two children together, Sierra and Jules.[6] Their daughter, Sierra, was five to six years old at the time the charged misconduct took place and eight at the time of trial. Her brother, Jules, was six to seven years old and nine at those times. At the time of the charged misconduct, Appellant and Ms. Mike were separated and pending divorce. The divorce was final at the time of the trial.

In 2022, Appellant was stationed at Navy Personnel Command in Millington, Tennessee. At this time, their children lived primarily with Ms. Mike in Georgia and would visit their father in Tennessee during the summer and school breaks.

When visiting Appellant, the children commonly watched television together with Appellant. While watching television, Sierra would typically lie on the couch with Appellant with her back against his chest while Jules was also in the same room watching television.[7] Additionally, Appellant and Sierra slept together in Appellant's king-sized bed.[8] Jules was generally not allowed to sleep in bed with Appellant and Sierra. On occasion he was allowed to sleep in the bedroom, but he was directed to sleep on the floor because Appellant claimed there was no space in the bed for him.[9]

On the morning of 14 June 2022, Appellant drove with his children to the Navy Exchange to buy alcohol. When Appellant attempted to purchase alcohol,

---

[5] Appellant raises this AOE under *United States v. Grostefon,* 12 M.J. 431 (C.M.A. 1982). *See* Appellant's Brief at 44.

[6] All names in this opinion, other than those of Appellant, the judges, and counsel, are pseudonyms.

[7] R. at 360-61; App. Ex. XXIX at 4-5, 25.

[8] R. at 358-59, 570; App. Ex. XVII at 30-32.

[9] R. at 343; App. Ex. XVII at 37-39.

he realized he had forgotten his wallet in the car. Appellant sent Jules to locate his wallet, but when Jules could not locate the car, Appellant went to look for the car himself. At this time, HMC Romeo was parking her car in the parking lot and witnessed Appellant "kind of stumbling" so she decided to approach him to see if everything was alright.[10] While HMC Romeo was talking with Appellant, she noticed his kids were there with him and that he "smelled like alcohol" and seemed intoxicated, which resulted in her simultaneously texting co-workers who then called the base police.[11] When base police arrived, Appellant was taken to the police station where base police administered a breathalyzer test. Appellant registered levels of 0.239, 0.243, and 0.239.[12] After the incident, Appellant's children stayed with their godparents until their mother, Ms. Mike, was able to pick them up.

Shortly after returning to Georgia, Ms. Mike noticed Sierra would not allow Jules to kiss and hug her goodnight, something he did every evening. Ms. Mike asked Jules to leave so she could ask Sierra what was wrong. Sierra told her she "doesn't want anyone touching her when she goes to sleep."[13] This alarmed Ms. Mike so she asked Sierra if anyone had touched her. Sierra explained that "[h]er dad reached into her pants and touched her butt."[14] Ms. Mike subsequently notified Appellant's command and later testified that she did not learn about Appellant touching Sierra anywhere else until after Sierra's CFI conducted by Ms. Poppa.[15]

Sierra testified at trial that while watching television she would lay on top of Appellant with her "back" touching "[h]is tummy."[16] When asked what happened when she was lying on Appellant's tummy, she testified "[he] touched me inappropriately . . . on the 'bum bum' . . . [and] in my tutu" underneath her clothes.[17] Sierra described her "tutu" as "underneath [her]" and uses it to go "number one."[18] When asked what Appellant's fingers were doing when he would touch her tutu, Sierra replied that his fingers were

---

[10] R. at 297.

[11] R. at 300.

[12] R. at 232-33.

[13] R. at 403.

[14] R. at 402.

[15] R. at 404.

[16] R. at 361.

[17] R. at 361-62.

[18] R. at 362.

"moving."[19] She explained that she "told [Appellant] to stop" but "[h]e kept doing it."[20] Additionally, Sierra explained that Appellant touched her "[i]nside" her "tutu" and when asked if she remembered how it felt, she replied, "uncomfortable."[21] Additionally, during Sierra's CFI, she disclosed her tutu had been turning red because she had not been "wiping good" and that her mom and grandmother knew this.[22] During cross examination, Sierra denied having issues wiping, but remembered telling Ms. Poppa she recalled her parents would help her "wash to make sure [she was] good and clean" when she was "a one-year-old."[23] Although Sierra was still having trouble properly wiping herself in June 2022,[24] neither Sierra nor Appellant mentioned the allegations of "inappropriate" touching occurred in the bathroom – it occurred only on the couch and in the bed.

NCIS Special Agents (SA) Kilo and Hotel interviewed Appellant in October 2022. During this interview, Appellant stated "I would play with her and grab her butt . . . I would go under her panties, and I would pinch her on her butt, and then she'd get up and then she'd laugh about it."[25] Appellant asserted when Sierra asked him not to touch her, he would stop.[26] Appellant maintained such actions were merely "horseplaying." However, he recalled an instance when Sierra "hit my hand away" while he was tickling her.[27]

Eventually, Appellant justified such actions with Sierra were no longer under the guise of horseplaying but rather while he was "daydreaming" of first his ex-wife and then changed to daydreaming and fantasizing about his ex-girlfriend. Appellant then maintained, briefly, "I did that with [my ex-girlfriend]. So, subconsciously, I think I would revert to doing that with my daughter . . . ."[28] Appellant admitted he felt ashamed when discussing what he did to Sierra and stated "I fucked up. I was like, it's like my pride got hurt

---

[19] R. at 362.

[20] R. at 363.

[21] App. Ex. XXIX at 7.

[22] App. Ex. XXIV at 3-4.

[23] R. at 373-5; App. Ex. XXIX at 3-4.

[24] R. at 410.

[25] App. Ex. XVII at 67.

[26] App. Ex. XVII at 100.

[27] App. Ex. XVII at 121-22.

[28] App. Ex. XVII at 174.

because I . . . didn't think. I didn't think . . . a man in general could be aroused by something like that."[29]

When asked whether Appellant ever had an erection while touching his daughter, he admitted this happened "a handful of times . . . less than five [times]," specifically while he rubbed Sierra's inner thigh.[30] Appellant stated, " I got sexually aroused. I got too close to the area, when I found out that I was getting sexually aroused I immediately dismissed myself into the kitchen or – or to my bedroom because I – I knew it was wrong."[31] Appellant continued to disclose more information to SA Kilo and Hotel, divulging "I hold back information is [sic] because I don't, that it's kind of like a pride thing . . . I'm still pretty shaken . . . [I] didn't mean to harm her or anything."[32] Appellant further stated to SA Kilo and Hotel, "it makes me feel like a monster."[33]

Ultimately, Appellant admitted to caressing Sierra's inner thigh, and while fantasizing about his ex-girlfriend, he would intentionally begin rubbing Sierra's clitoris and penetrating Sierra's vagina on two to five occasions while she was lying with him on the couch.[34] He admitted to becoming sexually aroused and gratified and got an erection on some but not all of these occasions.[35] Similarly, while he was in bed with Sierra, Appellant admitted having an erection two to three times out of the five times this scenario ensued.[36]

Members returned guilty verdicts for the sole specification of child endangerment in violation of Article 119b, and specifications 1, 3, and 4 of sexual abuse and rape of a child in violation of Article 120b.[37] The military judge sentenced Appellant to reduction to E-1, a dishonorable discharge, confinement for 1 year for the sole Specification of Charge I, confinement for 5 years for Specification 1 of Charge II, and confinement for 30 years for

---

[29] App. Ex. XVII at 176.

[30] App. Ex. XVII at 168-69.

[31] App. Ex. XVII at 182.

[32] App. Ex. XVII at 182-83.

[33] App. Ex. XVII at 184.

[34] App. Ex. XVII at 194.

[35] App. Ex. XVII at 168-69.

[36] App. Ex. XVII at 196-97.

[37] R. at 787.

Specification 4 of Charge II.[38] The periods of confinement will be served consecutively.[39] The military judge dismissed Specification 3 of Charge II following a finding of guilty by members conditioned upon completion of appellate review in which the finding of guilty of Specification 4 of Charge II is upheld.[40]

## II. DISCUSSION

### A. The evidence is legally and factually sufficient to support Appellant's Article 120b, UCMJ convictions.

#### 1. *Legal sufficiency*

a.   Standard of review for legal sufficiency.

Courts of Criminal Appeals "may affirm only such findings of guilty as the Court finds correct in law . . . ."[41] and will apply a de novo review.[42] To determine legal sufficiency, we ask whether, "considering the evidence in the light most favorable to the prosecution, a reasonable factfinder could have found all the essential elements beyond a reasonable doubt."[43] In conducting this analysis, we must view the evidence in the light most favorable to the prosecution," drawing every reasonable inference in the light most favorable to the prosecution."[44] The Government is free to meet its burden of proof with circumstantial evidence.[45]

b.   Analysis.

Appellant was found guilty of one specification of sexual abuse of a child involving sexual contact and one specification of rape of a child who has not attained the age of 12 years under Art. 120b.[46] To prove Appellant is guilty of

---

[38] R. at 869.

[39] R. at 869.

[40] Entry of Judgment; R. at 801-02.

[41] 10 U.S.C. § 866(d)(1)(A).

[42] *United States v. Washington*, 57 M.J. 394, 399 (C.A.A.F. 2002).

[43] *United States v. Turner*, 25 M.J. 324, 324 (C.M.A. 1987) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)); *see also United States v. Gutierrez*, 73 M.J. 172, 175 (C.A.A.F. 2014) (citing *United States v. Bennitt*, 72 M.J. 266, 268 (C.A.A.F. 2013)).

[44] *Gutierrez*, 74 M.J. at 65 (citation and internal quotation marks omitted).

[45] *United States v. King*, 78 M.J. 218, 221 (C.A.A.F. 2019).

[46] Appellant was also found guilty of the sole specification under Charge I of child endangerment in violation of Article 119b, UCMJ. While no errors were assigned by Appellant, this Court following a thorough review finds the conviction to be legally

sexual abuse of a child involving sexual contact, the Government had to prove beyond a reasonable doubt that on divers occasions:[47] (1) Appellant committed a lewd act [by caressing the inner thigh of Sierra with his finger]; (2) Sierra had not yet attained the age of 16 years; and (3) Appellant did so with an intent to arouse his own sexual desire.[48] Lewd act is defined as "any sexual contact with a child."[49]

To prove Appellant guilty of rape of a child, the Government had to prove beyond a reasonable doubt that on divers occasions: (1) Appellant committed a sexual act upon a child[50] [by penetrating Sierra's vulva with his finger]; (2) Sierra had not yet attained the age of 12 years;[51] and (3) Appellant did so with an intent to arouse his own sexual desire.[52]

The Government entered sufficient evidence to prove that Appellant committed a lewd act and sexual act upon a child. The evidence the Government admitted includes: (1) Sierra was five to six years old during the timeframe of the charged misconduct; (2) testimony of Sierra stating the Appellant had touched her on the "bum bum" and in her "tutu," underneath her clothes, more than one time; (3) the Appellant's damning interview with SA Kilo and Hotel where he confesses to both lewd and sexual acts with Sierra, including intentionally caressing Sierra's inner thigh and rubbing her clitoris and penetrating her vulva with his finger two to five times on the couch as well

---

sufficient. Additionally, Appellant was also found guilty of a separate specification under Charge II of Rape of a child who has not attained the age of 12 years. Because the military judge conditionally dismissed this specification and the conditions have not yet been triggered, a legal sufficiency review was not conducted.

[47] App. Ex. XXXVII at 4. ("Divers occasions" means two or more occasions).

[48] Charge Sheet at 1.

[49] "The term 'sexual contact' means touching, or causing another person to touch, either directly or through the clothing, the vulva, penis, scrotum, anus, groin, breast, inner thigh, or buttocks of any person, with an intent to . . . arouse or gratify the sexual desire of any person. Touching may be accomplished by any part of the body or an object." 10 U.S.C. § 920(g)(2).

[50] "The term 'sexual act' means (A) the penetration, however, slight, of the vulva or penis or anus of another by any part of the body or any object, with an intent to . . . arouse or gratify the sexual desire of any person; or (B) the intentional touching, not through the clothing, of the genitalia of another person who has not attained the age of 16 years with an intent to . . . arouse or gratify the sexual desire of any person. 10 U.S.C. §§ 920(g)(1)(C), 920b(h)(1).

[51] 10 U.S.C. § 920b(a).

[52] Charge Sheet at 3.

as approximately five times while in his bed; (4) Appellant admitting to being "sexual aroused" and having an erection "a handful of times" while performing these acts on Sierra.

We find Appellant's conviction for these offenses to be legally sufficient. Under the highly deferential standard for legal sufficiency in which we must draw all inferences in favor of the prosecution, a reasonable finder of fact could have found all elements beyond a reasonable doubt.

*2. Factual sufficiency*

Appellant challenges the Article 120b convictions as factually insufficient based on several deficiencies, primarily focused on witness credibility and Appellant's admission to SA Kilo and Hotel was not credible due to investigator bias and speculation. For its part, the Government contends that Appellant does not make any specific showing of a deficiency in the proof stating that Appellant's arguments amount to nothing more than a disagreement with the conclusion of the finders of fact. Even if a predicate showing was made, however, the Government argues that the evidence as whole cannot clearly convince the Court that the "weight of the evidence" supports a finding of not guilty. We find Appellant's conviction to be factually sufficient.

a.      Standard of review.

This Court may consider whether a finding of guilty is correct in fact upon request of an appellant who makes a specific showing of a deficiency in proof.[53] After an appellant makes such a showing, this Court may weigh the evidence and determine controverted questions of fact, providing appropriate deference to the fact that the trial court saw and heard the witnesses and other evidence.[54] If this Court is clearly convinced that the finding of guilty was against the weight of the evidence, we may dismiss, set aside, or modify the findings, or affirm a lesser finding.[55]

In reviewing cases involving child victims we are mindful of the CAAF's observation that "[i]nconsistencies . . . are not uncommon when child abuse victims testify . . . [a]ny person who suffers from some type of traumatic experience, adult or child, may have difficulty relating that experience in a chronological, coherent and organized manner."[56]

---

[53] 10 U.S.C. § 866(d)(1)(B).

[54] 10 U.S.C. § 866(d)(1)(B)(i)(I).

[55] 10 U.S.C. § 866(d)(1)(B)(iii).

[56] *United States v. Jones*, 85 M.J. 80, 85 (C.A.A.F. 2024) (cleaned up) (internal citations omitted).

b.      Analysis

Appellant contends questions of fact exist relating to witness creditability as well as the credibility of Appellant's confession. We assume without deciding that Appellant made a specific showing of a deficiency of proof;[57] however, the weight of the evidence overwhelmingly supports Appellant's guilty findings.

We acknowledge and provide appropriate deference to the fact the trial court saw and heard the witnesses. We also listened to the same recording of Appellant's interview with SA Kilo and Hotel as the finders of fact. Contrary to the claims of Appellant, we find his confession to SA Kilo and Hotel convincing. This is especially true in light of his apology and his expressions of shame. Significantly, Appellant's interview included admissions and key details that corroborate Sierra's testimony, as well as statements that showed a consciousness of guilt on Appellant's part.

Simply put, Appellant's confession is corroborated by Sierra's testimony and reporting of the sexual abuse and rape she suffered while in Appellant's care. That corroborated confession is, in large part, consistent with Sierra's testimony and other evidence presented, and undermines the list of evidentiary weaknesses identified by the Appellant. Unsurprisingly, Sierra did not answer all questions or describe all Appellant's actions with specificity, and she did not use the anatomically correct language or descriptions for what happened to her that an adult would. Of course, courts have long recognized that testimony of child victims may frequently have inconsistencies.[58] They may also lack the precision of adult testimony.

After our review of the record, we are convinced that Appellant committed lewd and sexual acts upon his daughter, Sierra, with the intent to arouse his own sexual desire. We base this finding primarily on Sierra's testimony and Appellant's interview with NCIS agents. Accordingly, having reviewed the briefs as well as the entirety of the record, we find Appellant's conviction to be factually sufficient.[59]

## B.  Appellant's trial defense counsel did not provide ineffective assistance.

Appellant contends he was denied effective assistance of counsel because trial defense counsel: (1) failed to cross-examine Ms. Poppa, who conducted Sierra's CFI; (2) failed to provide timely notice to call their expert, Dr. Romeo,

---

[57] Appellant's Brief at 30-33.

[58] *United States v. Cano*, 61 M.J. 74, 77 (C.A.A.F. 2005) (citing *Paramore v. Filion*, 293 F. Supp. 2d 285, 292 (S.D.N.Y. 2003)).

[59] *See United States v. Csiti*, 85 M.J. 414 (C.A.A.F. 2025).

as a witness to counter Dr. Bravo's testimony regarding the forensic soundness of Sierra's CFI; (3) failed to identify and explore the deficiencies and inconsistencies in Sierra's CFI that rendered it forensically unsound; and (4) failed to preserve  an objection to portions of Sierra's CFI as a prior consistent statement.[60]

### 1. Standard of Review.

Allegations of ineffective assistance of counsel are reviewed de novo.[61] Counsel are presumed to be competent and the Court does not second guess trial defense counsel's strategic or tactical decisions.[62]

To prevail on a claim of ineffective assistance of counsel, an appellant must first "show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment."[63] This means that an appellant "must show that counsel's representation fell below an objective standard of reasonableness."[64] Further, judicial scrutiny of counsel's performance must be highly deferential, and this Court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance . . . ."[65]

Second, an appellant "must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable."[66] It is not enough to show that the errors had some conceivable effect on the outcome.[67] An appellant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome."[68]

---

[60] Appellant's Brief at 36.

[61] *United States v. Palik*, 84 M.J. 284, 288 (C.A.A.F. 2024) (citing *United States v. Tippit*, 65 M.J. 69, 76 (C.A.A.F. 2007)).

[62] *See United States v. Morgan*, 37 M.J. 407, 410 (C.M.A. 1993).

[63] *Strickland v. Washington*, 466 U.S. 668, 687 (1984).

[64] *Id.* at 688.

[65] *Id.* at 689.

[66] *Id.* at 687.

[67] *Id.* at 693.

[68] *Id.* at 694.

The two-prong approach laid out in *United States v. Strickland* is not a sequential test. We need not always determine "whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies . . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed."[69]

*2. Analysis.*

Appellant claims that

"[e]xposing and arguing all these deficiencies, through cross-examination of Ms. Poppa and Dr. Bravo, and through the testimony of Dr. Romeo (had the defense provided timely notice to the Government), and even continuing to lodge an objection to Pros. Ex. 11 (portions of Sierra's CFI), *could have* led the panel to view Appellant's admissions in a different light, and be more convinced that [Appellant's] 'admissions' were genuinely the result of investigator bias leading him to those 'admissions,' thereby leading to the probability of a different result."[70]

We disagree.

Even assuming, arguendo, that this Court finds Appellant's claims of trial defense counsel's deficient performance, whether considered individually or collectively, satisfy the first prong of *Strickland*, there remains no showing of prejudice to Appellant. Our conclusion rests upon the damaging confession by Appellant, which corroborates critical elements of Sierra's and other witnesses' testimony. In his brief, the Appellant minimizes the weight and impact of his confession.

Thus, Appellant failed to show "errors" so serious that there is a reasonable probability that, but for alleged deficient performance, the result of Appellant's proceeding would be different. Therefore, we hold that trial defense counsel's performance, even assuming that it was somehow deficient, was not "sufficient to undermine confidence in the outcome" of the trial and did not prejudice his defense.

Since we conclude that Appellant was not prejudiced by any alleged error, we do not reach the question whether trial defense counsel's alleged errors constituted deficient performance in this case. Accordingly, this assignment of error is without merit.

---

[69] *Id.* at 697.

[70] Appellant's Brief at 44 (emphasis added).

### C. Appellant's sentence to 30 years of confinement for Specification 4 of Charge II is appropriate.

Appellant contends his sentence to 30 years of confinement for Specification 4 of Charge II is inappropriately severe, arguing the amount of confinement imposed is "generally adjudged for child rape cases involving *penile* [not digital] penetration, even those involving young biological children."[71] Thus, Appellant requests this Court, in the interest of even-handedness, reduce his sentence to 22 years.[72] The Government claims Appellant's request is tantamount to a request for impermissible clemency, arguing the sentence is appropriate given the gravity of the offense committed against Sierra, his own daughter, that took place in Appellant's home during a time he was the sole parent responsible for her care.[73]

We review sentence appropriateness de novo.[74] After conducting an "individualized consideration of the particular [appellant] on the basis of the +nature and seriousness of the offense[s] and the character of the offender"[75] in our effort to "assur[e] that justice is done and that the [appellant] gets the punishment he deserves,"[76] we conclude that the adjudged sentence, both segmented and as a whole,[77] should be approved. Accordingly, Appellant's sentence is not inappropriately severe and is affirmed.

---

[71] Appellant's Brief at 45-46.

[72] *Id.*

[73] Appellee's Answer at 43-44.

[74] *United States v. Lane*, 64 M.J. 1, 2 (C.A.A.F. 2006).

[75] *United States v. Snelling*, 14 M.J. 267, 268 (C.M.A. 1982) (cleaned up).

[76] *United States v. Healy*, 26 M.J. 394, 395 (C.M.A. 1988).

[77] *See United States v. Flores*, 84 M.J. 277, 278 (C.A.A.F. 2024).

### III. CONCLUSION

After careful consideration of the record and briefs of appellate counsel, we have determined that the findings and sentence are correct in law and fact and that no error materially prejudicial to Appellant's substantial rights occurred.[78]

The findings and sentence are **AFFIRMED**.

FOR THE COURT:

MARK K. JAMISON
Clerk of Court

---

[78] Articles 59 & 66, UCMJ.