*This opinion is subject to revision before publication.*

# UNITED STATES COURT OF APPEALS
## FOR THE ARMED FORCES

————————

## UNITED STATES
Appellee

**v.**

## James T. CUNNINGHAM, Senior Airman
United States Air Force, Appellant

### No. 23-0027
Crim. App. No. 40093

Argued March 29, 2023—Decided July 21, 2023

Military Judge: Sterling C. Pendleton

For Appellant: *Major Spencer R. Nelson* (argued); *Major David L. Bosner*.

For Appellee: *Major Morgan R. Christie* (argued); *Colonel Naomi P. Dennis* and *Mary Ellen Payne*, Esq. (on brief).

Judge SPARKS delivered the opinion of the Court, in which Chief Judge OHLSON and Judge JOHNSON joined. Judge MAGGS filed a separate opinion concurring in part and dissenting in part, in which Judge HARDY joined.

————————

Judge SPARKS delivered the opinion of the Court.

In 2021, a general court-martial consisting of officer and enlisted members convicted Senior Airman (SrA) James T. Cunningham (Appellant), contrary to his pleas, of murder in violation of Article 118, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 918 (2018). A military judge sentenced Appellant to a dishonorable discharge, confinement for eighteen years, forfeiture of all pay and allowances, and reduction to E-1. After the convening authority took no action on the case, the lower court affirmed the findings and the sentence. *United States v. Cunningham*, No. ACM 40093, 2022 CCA LEXIS 527, at *2, 2022 WL 4115134, at *1 (A.F. Ct. Crim. App. Sept. 9, 2022) (unpublished).

This Court then granted review of the following issues:

> I. Whether the Air Force Court properly applied *United States v. Edwards*, 82 M.J. 239 (C.A.A.F. 2022) in finding error—but no prejudice—for a victim impact statement that included videos, personal pictures, stock images of future events, and lyrical music that touched on themes of dying, saying farewell, and becoming an angel in heaven.
>
> II. Whether trial counsel's sentencing argument was improper under *United States v. Warren*, 13 M.J. 278 (C.M.A. 1982) and *United States v. Norwood*, 81 M.J. 12 (C.A.A.F. 2021), respectively, when she: (1) argued that Appellant's uncharged, false statements were aggravating evidence after she had previously cited case law to the military judge that said false statements were not admissible as evidence in aggravation; and (2) told the military judge that he had seen the media and the world was watching, to justify her sentence recommendation.
>
> III. Whether Appellant was deprived of the right to a unanimous verdict under *Ramos v. Louisiana*, 140 S. Ct. 1390 (2020), after the military judge denied his motion for unanimity, denied his request to poll the panel on whether its verdict was

2

unanimous, and the Air Force Court dismissed the
issue with no discussion.[1]

*United States v. Cunningham*, 83 M.J. 139 (C.A.A.F. 2022)
(order granting review). We answer the first granted issue
in the affirmative and hold that the second granted issue
is expressly waived.

## I. Background

At the time of the offense, Appellant was approximately
twenty-six years old and had been dating CM before the
couple had a child, ZC. The three lived together with two
housemates: BS and BS's husband. On the day of the of-
fense ZC was almost six months old. ZC's day-care provider
texted CM letting her know that he was happy and acting
normally while at day care. 2022 CCA LEXIS 527, at *4,
2022 WL 4115134, at *2. Appellant brought ZC home from
day care while CM was still at work. After doing so, Appel-
lant took ZC upstairs and began playing video games. *Id.*,
2022 WL 4115134, at *2. BS noted that ZC was " 'unusu-
ally' fussy," and texted her husband that it sounded like
Appellant was throwing something or jumping around as if
he were annoyed that he had to stop playing video games
because of ZC. *Id.*, 2022 WL 4115134, at *2. After BS sent
this text, Appellant called for BS, saying that something
"was wrong" with ZC and he did not know why. BS testified
that ZC did not appear normal, he was limp and could not
hold his head up. BS then called 911.

Throughout the ordeal Appellant gave various stories to
several parties—his housemate, first responders, and local
authorities—about what happened to ZC. For instance, he
told first responders that ZC woke up "fussy" and started
making gurgling noises when he tried to feed ZC. Upon be-
ing told that medical personnel discovered a brain bleed in
ZC, Appellant then changed his story several times: ZC hit
his head while in his baby "jumper" seat, Appellant

---

[1] Issue III was not argued or briefed, as it was held as a
trailer to *United States v. Anderson*, __ M.J. __ (C.A.A.F. 2023).
Based upon the decision in *Anderson*, we hold that Appellant
was not deprived of the right to a unanimous verdict.

dropped ZC onto a carpeted floor, and ZC fell onto a hard-
wood floor. Appellant ultimately admitted that he hit ZC in
the face out of frustration because ZC would not stop cry-
ing. He told investigators that he was " 'afraid [authorities]
were going to take [his] kid from [him]. . . . [he] got frus-
trated. . . . [ZC] just kept screaming . . . . [he] just let that—
frustration, the anger, just build up.' " 2022 CCA LEXIS
527, at \*14, 2022 WL 4115134, at \*5. As a result of the in-
juries, ZC died nine days later in the hospital.

### A. Sentencing Testimony and the Victim Impact Statement

CM and CM's mother testified under oath during the
Government's sentencing case without objection. CM's
mother testified about the impact ZC's death had upon her
and CM. CM's mother explained that, upon hearing about
ZC's injuries, she immediately flew to be with her daughter
and was at the hospital for ZC's last days. She testified that
seeing ZC in the hospital was "horrific," and that it was the
"worst thing" she had witnessed in her life. Observing her
daughter's struggle with ZC's death, and ZC's death itself,
"changed [CM's mother's] entire life." CM's mother re-
quested medications to help cope and considered suicide.
Every night CM's mother would receive multimedia mes-
sages via Snapchat of her daughter crying, "talking about
how she misses her child, [and how] she misses being a
mommy."

CM testified in detail about the process of deciding to
withdraw life support, the moment ZC died in her arms,
her suffering after his death, and the toll it took on her. CM
described that she lost not only her child, but also her rela-
tionship with Appellant, the ability to trust others, and
"the future [she] thought [she] had." During her testimony,
CM referenced three pages of pictures which were later ad-
mitted as a prosecution exhibit, consisting of photos of ZC's
hospital room, CM looking at ZC in the hospital, and CM
cuddling ZC in the hospital bed.

CM was appointed as ZC's representative pursuant to
Article 6b, UCMJ, 10 U.S.C. § 806b (2018), and in this role
made an unsworn victim impact statement following the

Government's sentencing case. CM's victim impact statement consisted of her orally addressing the military judge while using a PowerPoint slideshow that consisted of pictures, videos, and somber music. The PowerPoint presentation contained eleven slides, including animations which included transitions, appearing and disappearing text, and slides crumpling like paper that is being thrown away. It also included over fifty still images; four still images which were stock images of future life events which ZC would not experience (such as a first day at school, marriage, and graduation); and embedded presentations that automatically played video with accompanying audio. CM then finished her victim impact statement orally. CM stated that "all the slides [she] presented . . . videos, pictures, words . . . all come from [her]."

## II. Standard of Review

Interpreting Rule for Courts-Martial (R.C.M.) 1001A (2016 ed.) is a question of law this Court reviews de novo. *United States v. Edwards*, 82 M.J. 239, 243 (C.A.A.F. 2022).[2] However, we review a military judge's decision to accept a victim impact statement offered pursuant to R.C.M. 1001A for an abuse of discretion *Id.* "When the Court finds error in the admission of sentencing evidence (or sentencing matters), the test for prejudice is 'whether the error substantially influenced the adjudged sentence.'" *Id.* at 246 (quoting *United States v. Barker*, 77 M.J. 377, 384 (C.A.A.F. 2018)).

## III. Analysis

### A. The Victim Impact Statement

Under the plain text of R.C.M. 1001A(e) (2016 ed.), unsworn statements may be "oral, written, or both." In *Edwards*, we concluded that the military judge abused his discretion by admitting a victim impact statement that

---

[2] We note that in the 2019 edition of the *Manual for Courts-Martial*, R.C.M. 1001A (2016 ed.) has been incorporated into R.C.M. 1001 as R.C.M. 1001(c) (with subsection header "Crime victim's right to be reasonably heard").

consisted of a video presentation containing photographs and music because R.C.M. 1001A(e) (2016 ed.) only authorized a victim impact statement that was "oral, written, or both." In this case, even though R.C.M. 1001A(e) (2016 ed.) has been moved to R.C.M. 1001(c) (2019 ed.), the rule still only authorizes a victim impact statement which is "oral, written, or both." R.C.M. 1001(c)(5)(A). Accordingly, the admission of the victim impact statement in the instant case is error as it similarly contained elements which were neither "oral" nor "written," namely, the music and photographs. *Edwards*, 82 M.J. at 244. As such, the analysis turns to prejudice.[3]

## *Prejudice*

The Government "bears the burden of demonstrating that the admission of erroneous evidence was harmless." *Id.* at 246. We consider "four factors when deciding whether an error substantially influenced an appellant's sentence: '(1) the strength of the Government's case; (2) the strength of the defense case; (3) the materiality of the evidence in question; and (4) the quality of the evidence in question."[4] *Id.* at 247 (quoting *Barker*, 77 M.J. at 384). We conduct this analysis de novo. *United States v. Thompson*, 63 M.J. 228, 231 (C.A.A.F. 2006)). "[I]t is highly relevant when analyzing the effect of error on the sentence that the case was tried before a military judge, who is presumed to

---

[3] As in *Edwards*, 82 M.J. at 243, we need not—and do not—decide whether the rules would ever permit a victim to offer an unsworn statement via prerecorded video because the victim impact statement at issue in this case was deficient for the reasons explained above. Additionally, although part of CM's victim impact statement consisted of her making an oral statement, we make no ruling as to whether what she said is severable from the victim impact statement as a whole.

[4] As we have done in the past, the Court acknowledges that applying these factors to sentencing, as opposed to errors occurring during the findings phase of the court-martial, is difficult. *See Edwards*, 82 M.J. at 247. Nonetheless, it is the test with which we conduct sentencing errors given our precedent, and as such we are obligated to use it.

know the law." *Barker*, 77 M.J. at 384 (citing *United States v. Bridges*, 66 M.J. 246, 248 (C.A.A.F. 2008)).

As for the first factor, the Government's sentencing case is strong and weighs heavily in its favor. Appellant was convicted of a serious crime which exposed him to a potentially long sentence. Namely, Appellant struck his six-month-old child in the head out of frustration, causing ZC's death; he lied multiple times to multiple people, including first responders responsible for ZC's care; and CM and CM's mother's collective sworn testimonies highlighted their collective suffering which directly resulted from the crime, which was the murder of an infant. Furthermore, Appellant concedes that this "first *Barker* factor weighs in favor of the Government as its sentencing case was strong in the sense that the victim's grandmother and mother testified under oath about the devastating impact [ZC's] death had on them."

As for the second factor, unlike in *Edwards*, 82 M.J. at 247, Appellant did introduce matters in extenuation and mitigation. Multiple parties spoke on Appellant's behalf. Although there was a significant number of people doing so, thirteen in total, the majority came as unsworn recorded statements. However, Appellant's own unsworn testimony focused almost entirely on himself—how he could not attend ZC's funeral, or how he could not be there to support CM—and he expressed little remorse for his actions. Nonetheless, we conclude that this factor weighs slightly in favor of Appellant.

The third factor, materiality, weighs in the Government's favor. Although matters are material if they have "some logical connection with the facts of the case or the legal issues presented,"[5] "an error is more likely to have prejudiced an appellant if the information conveyed as a result of the error was not already obvious from what was presented at trial." *Edwards*, 82 M.J. at 241; *see also United States v. Harrow*, 65 M.J. 190, 200 (C.A.A.F. 2007)

---

[5] *Black's Law Dictionary* 701 (11th ed. 2019).

(noting that an error is likely to be harmless when a fact was already obvious from prior testimony and the evidence in question "'would not have provided any new ammunition'" (quoting *United States v. Cano*, 61 M.J. 75, 77-78 (C.A.A.F. 2005))). The information contained in the Power-Point presentation was drawn from the evidence that had already been admitted during both the trial on the merits and sentencing proceedings. CM and her mother both testified during the sentencing and communicated the "profound pain and devastating impact that Appellant's crime had on them." 2022 CCA LEXIS 527, at *38, 2022 WL 4115134, at *12. Properly admitted photos and the content of CM's testimony from presentencing proceedings illustrate her devastation resulting from Appellant's acts. For example, CM testified that she wanted to be a "mother more than anything" when she grew up; she thought ZC was a perfect baby; receiving the call that ZC was going to the hospital was the worst phone call she had ever received; when she was told by the neurosurgeon that ZC would not survive, it felt as if "somebody took a knife and jabbed it into [her] heart, and pulled it back out, and stomped on it"; "it was hell" when she was woken up and was told ZC was brain dead after spending eight days in the hospital with him; after deciding to take ZC off of life support she held him in her arms as he died; she likely will have trust issues if she were to attempt to have children in the future; and everything felt as if it were taken from her. Also admitted into evidence were photos of ZC hooked up to lifesaving equipment, and CM in bed cuddled next to ZC. Additionally, while the Government's sentencing argument referenced "victim impact," and mentioned that CM spoke on her own behalf and that of ZC, as his authorized representative, it did not *explicitly* reference the content of the PowerPoint presentation or CM's oral victim impact statement.[6] The cumulative nature of the videos and

---

[6] Appellant states that although the PowerPoint presentation was not used during trial counsel's argument, it was still "clearly referenced" by the Government, and thus, it was

photographs—despite their materiality to the case—provides no additional information than what was presented during sentencing testimony, and as such supports our holding that Appellant suffered no prejudice. *See also United States v. Hursey*, 55 M.J. 34, 36 (C.A.A.F. 2001) (concluding that an error to admit evidence was harmless in part because the record contained a significant amount of admissible evidence that was similar). Lastly, although the admitted music was not necessarily cumulative, we nonetheless do not expect it to sway a military judge.

As for the quality of the evidence, the fourth *Barker* factor, it also weighs against Appellant. The quality of the evidence may be assessed by its tendency, if any, to influence the trier of fact, or in this case, the sentencing authority. The victim impact statement in this case was clearly intended by the victim advocates to evoke emotion. Nonetheless, military judges are "presumed to know the law" and follow it absent clear evidence to the contrary. *United States v. Erickson*, 65 M.J. 221, 225 (C.A.A.F. 2007); *Barker*, 77 M.J. at 384. We note that the military judge in the instant case, in reference to the victim impact statement, stated that he would "give it the weight that it

---

material. The "reference" is insignificant at most, especially when compared to the use of the actual video by counsel during sentencing argument in *Edwards*. In the instant case, trial counsel said that:

> [CM] never did get to take those six-month photos of [ZC]. She is never going to watch him graduate. She is never going to hear him utter the words mama to her. Every single moment in his life, from the major to the mundane were destroyed, erased, wiped away with the accused [*sic*] murder.

Brief for Appellant at 21, *United States v. Cunningham*, No. 23-0027 (C.A.A.F. Jan. 12, 2023) (alterations in original) (internal quotation marks omitted). The only overlap between the victim impact statement and trial counsel's words was one slide in the PowerPoint presentation, which had a stock graduation photo, and CM stating orally that she would never be able to "applaud as he walks across the stage on graduation day." This is not an explicit reference to the victim impact statement.

deserves, and [he] will consider it under the rule as [he] mentioned." However, we do not conclude that this necessarily indicates that the military judge gave the victim impact statement any weight, let alone was substantially influenced by it, and thus is not "clear evidence to the contrary." *Erickson*, 65 M.J. at 225. A military judge understands that emotions cannot enter the final determination of the sentence, and a military judge is far less likely to be influenced by the emotional aspects of a victim impact statement even if it were designed to explicitly invoke emotion. *See, e.g., United States v. Manns*, 54 M.J. 164, 167 (C.A.A.F. 2000) (noting that in bench trials the risk of unfair prejudice is substantially less than it would be with members). There is no indication in this record that the military judge allowed the emotional aspects of the presentation to affect him to a point that he departed from his duty to determine an appropriate sentence in a fair, objective, and unbiased manner. Ultimately, the military judge imposed a sentence of eighteen years in opposition to the Government's request of at least twenty to twenty-five years of confinement. Yes, the military judge erred in allowing the victim impact statement based on its *format*, as pictures and music are not permissible. *See Edwards*, 82 M.J. at 243-44. Yet, even with this error, again, there is nothing in the record to support that the military judge was *substantially influenced* by the victim impact statement as it was presented. *See, e.g., Barker*, 77 M.J. at 384 (holding that in a bench trial, despite the military judge erring in admitting victim impact statements given their inappropriate format, it was the "particularly horrific" "manner in which [the victimized children] were sexually assaulted" that influenced the adjudged sentence, not the wrongly admitted statements). After assessing the above factors, we hold that the Government has met its burden to demonstrate that the error did not substantially influence Appellant's sentence.

## B. Improper Sentencing Argument

At the conclusion of their sentencing arguments, the military judge asked if either party had any objections.

Government trial counsel and trial defense counsel answered in the negative. "Whether an appellant has waived an issue is a legal question that this Court reviews de novo." *United States v. Davis*, 79 M.J. 329, 332 (C.A.A.F. 2020) (citing *United States v. Haynes*, 79 M.J. 17, 19 (C.A.A.F. 2019)). In this case, trial defense counsel "did not just fail to object," but "affirmatively declined to object" when answering "no" to the military judge's question. *Davis*, 79 M.J. at 331-32. We hold that this response constitutes an express waiver, obviating the need to address the issue of improper sentencing argument.

## IV. Conclusion

The decision of the United States Air Force Court of Criminal Appeals is affirmed.

Judge MAGGS, with whom Judge HARDY joins, concurring in part and dissenting in part.

In this appeal, Appellant challenges a sentencing argument and a victim impact statement. I fully agree with the Court's conclusion that Appellant expressly waived his objections to the sentencing argument. But I only partially agree with the Court's analysis of the victim impact statement. Specifically, I agree with the Court that the military judge abused his discretion by allowing the victim's representative to present a PowerPoint slideshow that included pictures, videos, and music with lyrics during the sentencing phase of the trial. I further agree with the Court that precedent requires us to consider the factors discussed in *United States v. Barker*, 77 M.J. 377, 384 (C.A.A.F. 2018), in determining whether this error was harmless. But I do not agree with the Court's holding that the Government has proved that the error did not substantially prejudice Appellant.

In my view, this case is indistinguishable from *United States v. Edwards*, 82 M.J. 239, 248 (C.A.A.F. 2022). In *Edwards*, this Court held that the government failed to prove that a nearly identical error did not substantially prejudice the accused. *Id.* I would reach the same conclusion here. Accordingly, while I concur in the Court's judgment insofar as it affirms the finding that Appellant is guilty of unpremeditated murder, I respectfully dissent from the judgment insofar as it affirms the sentence.

I write separately for two reasons. The first is to explain why I believe this case is indistinguishable from *Edwards*. The second is to question whether the four *Barker* factors are generally suited to the task of deciding whether an error has substantially affected a sentence. This case and *Edwards* suggest that they are not.

## I. The *Edwards* Precedent

In *Edwards*, a court-martial found the appellant guilty of one specification of unpremeditated murder and sentenced him to thirty-five years in prison, a dishonorable discharge, reduction to the grade of E-1, and forfeiture of all pay and allowances. 82 M.J. at 241-42. On appeal to this Court, the appellant argued that the military judge had abused his discretion by allowing the victim's

representative to present a sophisticated video during the presentencing phase of the trial. *Id.* at 240-41. The video included an interview with the victim's parents and a slideshow of photographs set to background music. *Id.* at 240. It turned out that trial counsel had produced the video on behalf of the victim's family. *Id.* at 241.

In addressing the appellant's argument, this Court observed that Rule for Courts-Martial (R.C.M.) 1001A(e) (2016 ed.), authorized "a victim or the victim's designee" to make an unsworn impact statement that is " 'oral, written, or both.' " *Edwards*, 82 M.J. at 241. The Court then ruled that the military judge had abused his discretion in allowing the video to serve as a victim impact statement on two separate grounds. *Id.* First, the Court reasoned that a video that includes music and pictures is not an oral or written statement within the meaning of R.C.M. 1001A(e). *Id.* Second, the Court reasoned that the right to make an unsworn statement belongs to the victim or the victim's designee and cannot be transferred to trial counsel. *Id.*

Having determined that an error occurred, the Court turned to prejudice. The Court held that the government had conceded that it had the burden of proving that the error did not substantially influence the adjudged sentence. *Id.* at 246 (citing *Barker*, 77 M.J. at 384). The Court further held that it would assess prejudice by considering four factors identified in *Barker*: "(1) the strength of the Government's case; (2) the strength of the defense case; (3) the materiality of the evidence in question; and (4) the quality of the evidence in question." *Id.* at 247 (internal quotation marks omitted) (quoting *Barker*, 77 M.J. at 384). In addition to the *Barker* factors, the Court cited *United States v. Harrow*, 65 M.J. 190, 200 (C.A.A.F. 2007), for the principle that an error is more likely to have prejudiced the accused "if the information conveyed as a result of the error was not already obvious from what was presented at trial." 82 M.J. at 247.

The Court in *Edwards* decided that the first two factors did not support a conclusion that prejudice had occurred because the government's case was strong, and the

defense's case was not. *Id.* But the Court decided that the materiality and quality factors supported a conclusion that prejudice had occurred. *Id.* The Court reasoned that the video was material because it included content "that had the potential to influence the sentencing decision of the panel." *Id.* at 248. The Court further reasoned that the quality of the video weighed in favor of finding prejudice because the video was "emotionally moving." *Id.* Balancing all the factors, the Court held that the government failed to meet its burden of establishing that the video did not substantially influence the appellant's sentence. *Id.*

In my view, this case is indistinguishable from *Edwards*. In both cases, the court-martial found the accused guilty of murder. In both cases, the military judge allowed the victim's representative to present music, video, and photographs as a victim impact statement. In both cases, the court-martial imposed a lengthy prison sentence. In *Edwards*, this Court held that the military judge abused his discretion because R.C.M. 1001A(e) (2016 ed.) only authorized a victim impact statement that was "oral, written, or both." In this case, even though R.C.M. 1001A(e) (2016 ed.) has been moved to R.C.M. 1001(c) (2019 ed.), the rule still only authorizes a victim impact statement which is "oral, written, or both." R.C.M. 1001(c)(5)(A). The military judge in this case therefore abused his discretion for the same reason as the military judge in *Edwards*.

In deciding whether the error was harmless, my analysis of the *Barker* factors is essentially the same as the Court's analysis of these factors in *Edwards*. Applying the first two *Barker* factors, I would conclude, as the Court did in *Edwards*, that the Government's case was strong, and that the defense's case was not. Accordingly, I agree that these factors do not support a conclusion that prejudice occurred.

The third *Barker* factor is the materiality of what was wrongly considered at sentencing. Evidence or other matters considered in a trial are "material" if they have "some logical connection with the facts of the case or the legal issues presented." *Black's Law Dictionary* 701 (11th ed.

2019). In this case, the PowerPoint presentation was material for the same reason that the improper video was material in *Edwards*: it presented information about the impact of the offense that "had the potential to influence the sentencing decision of the panel." *Edwards*, 82 M.J. at 248. The photographs and videos conveyed the profound effects of the murder on the victim's mother and the loss of life that the infant victim himself suffered.

The final *Barker* consideration is the "quality" of what was wrongly considered at sentencing. When appellate courts assess the quality of evidence or other information presented at trial (as opposed to, say, the *quantity* of such evidence or other information), their task is one of estimation. They must appraise the evidence or other information and determine how likely it was to have convinced or influenced the court-martial in the circumstances of the case. *See, e.g.*, *United States v. Thompson*, 63 M.J. 228, 232 (C.A.A.F. 2006) (concluding that the "actual worth of the statements about preservice drug use was minimal" because they were scarcely cited by counsel and subject to a limiting instruction by the military judge); *United States v. Kerr*, 51 M.J. 401, 406 (C.A.A.F. 1999) (concluding that the "quality" of some wrongly admitted evidence was "of questionable credibility"). As in *Edwards*, I would conclude that the photos, video, and music had a tendency to influence the sentence. Indeed, the military judge expressly confirmed the quality of the PowerPoint presentation when he said: "To me, that's proper victim impact including psychological, social impact directly relating to or arising from the offense to which the accused has been found guilty." For these reasons, I would conclude that, like the quality of the video in *Edwards*, the quality of the PowerPoint presentation supports a conclusion that prejudice occurred. Balancing all four factors, I would hold that the Government failed to prove that the error did not substantially affect the sentence.

The Court reaches a different conclusion in part because of its assessment of the materiality factor. The Court acknowledges that the PowerPoint presentation was

material but decides that the materiality factor should not weigh heavily in the prejudice analysis because the content of the PowerPoint presentation was largely cumulative of other evidence. I agree that the PowerPoint presentation might have been more prejudicial if it had presented more new information. But that does not make the PowerPoint presentation any less material or *negate* its tendency to influence the sentencing decision. This factor, accordingly, still favors Appellant and weighs against the Government.

The Court also concludes that the "quality" of the presentation favors the Government because nothing in the record shows that the emotional aspects of the presentation actually affected the military judge's judgment. I agree that it is difficult to point to anything in the record of this case that demonstrates the extent to which the PowerPoint presentation actually influenced the military judge. But absent a highly unusual express statement by a sentencing authority about sentencing deliberations, the record of a case almost never will reveal the actual extent to which improper evidence or unsworn statement influenced the sentence. Accordingly, under *Edwards* and *Barker*, the quality factor is not and cannot be assessed by the lack of an express indication of the actual effect of the PowerPoint presentation on the sentencing authority. Instead, as the Court itself explains, the quality of the PowerPoint presentation must be evaluated by its "*tendency . . .* to influence the *. . .* sentencing authority." (Emphasis added.) Just like the video in *Edwards*, the "emotionally moving" PowerPoint presentation in this case had a tendency to influence the military judge, and therefore Appellant's sentence, by "evok[ing] an emotional response." 82 M.J. at 248. This factor therefore also favors Appellant and weighs against the Government.

Finally, the Court presumes that the military judge understood the law and therefore did not give much consideration to the music and photographs in the video. While we always start with a presumption that military judges know the law, *see United States v. Erickson*, 65 M.J. 221, 225 (C.A.A.F. 2007), the presumption must give way when

there are persuasive contrary indications. In this case, when the military judge overruled trial defense counsel's objection to the video, the military judge erred under R.C.M. 1001(c)(5)(A). He further demonstrated that the PowerPoint presentation would affect his judgment when he characterized the PowerPoint presentation as containing "proper victim impact." In these circumstances, the presumption does not change my view.

For the reasons discussed above, I would affirm the decision of the United States Air Force Court of Criminal Appeals with respect to the finding of guilty but reverse with respect to the sentence and return the record to the Judge Advocate General of the Air Force for remand to the Court of Criminal Appeals either to reassess the sentence based on the affirmed finding of guilty or to order a sentence rehearing.

## II. Using the *Barker* Factors to Determine Whether Errors in Sentencing Were Harmless

In *United States v. Weeks*, this Court first adopted a four-factor test for determining whether erroneous evidentiary rulings substantially affected the *findings* of a court-martial. 20 M.J. 22, 25 (C.M.A. 1985). These factors were refined in *Kerr*, 51 M.J. at 405, and later became known as the *Kerr* factors. *See United States v. Bowen*, 76 M.J. 83, 89 (C.A.A.F. 2017). In *Barker*, without much discussion, this Court applied the same four factors used in *Kerr* to determine whether an error at sentencing substantially affected the *sentence*. 77 M.J. at 384. This Court followed *Barker* in *United States v. Hamilton*, 78 M.J. 335, 343 (C.A.A.F. 2019), and *Edwards*, 82 M.J. at 247.

However suitable the four factors might be for determining prejudice with respect to the findings, I have significant doubts about whether they are apt for deciding whether an error affected the sentence. In *Edwards* and in the present highly similar case, this Court has applied the *Barker* factors but arrived at different results. At least part of the reason for our disagreement may be that the *Barker*

factors are simply too crude a tool for determining whether an error at sentencing substantially affected a sentence.

Deciding whether an error influenced the sentence is more difficult than deciding whether an error influenced the findings. Findings generally involve a binary choice of whether the accused is guilty or not guilty of a charged offense. In contrast, sentencing involves considerable discretion. In this case, the military judge sentenced Appellant to confinement for eighteen years. A wide variety of considerations must have gone into that decision. Even if the PowerPoint presentation only added several months to his confinement, that would still be material prejudice to Appellant. I am skeptical that we can rule out that possibility using just the *Barker* factors. And by limiting analysis of prejudice to these four factors, we unnecessarily focus more on their definitions than on the total effects of an error.

Article 59(a), UCMJ, provides that a "sentence of a court-martial may not be held incorrect on the ground of an error of law unless the error materially prejudices the substantial rights of the accused." 10 U.S.C. § 859(a) (2018). This Court has reduced the "material prejudice" standard to just the four factors listed in *Barker*. These factors are important to consider but I think it was a mistake in *Barker* to *limit* our consideration to these factors given the difficulty of deciding whether errors during the sentencing phase of the trial affected the sentence.