*This opinion is subject to revision before publication.*

# UNITED STATES COURT OF APPEALS
## FOR THE ARMED FORCES

————————

**UNITED STATES**
Appellee

**v.**

**Tryvon M. JONES, Private First Class**
United States Army, Appellant

**No. 23-0188**
Crim. App. No. 20210503

Argued January 17, 2024—Decided August 28, 2024

Military Judges: Steven C. Henricks (arraignment)
and Jacqueline L. Emanuel (trial)

For Appellant: *Captain Tumentugs D. Armstrong* (argued); *Colonel Philip M. Staten* and *Major Mitchell D. Herniak* (on brief); *Lieutenant Colonel Dale C. McFeatters.*

For Appellee: *Captain Patrick S. Barr* (argued); *Colonel Christopher B. Burgess, Lieutenant Colonel Matthew T. Grady*, and *Major Kalin P. Schlueter* (on brief).

Judge JOHNSON delivered the opinion of the Court, in which Chief Judge OHLSON, Judge SPARKS, Judge MAGGS, and Judge HARDY joined.

————————

Judge JOHNSON delivered the opinion of the Court.

On September 15, 2021, a military judge sitting alone as a general court-martial convicted Private First Class (PFC) Tryvon M. Jones (Appellant), contrary to his pleas, of one specification of sexual assault of a child (Specification 1 of Charge I), two specifications of sexual abuse of a child (Specifications 2 and 3 of Charge I), and one specification of aggravated assault (the Specification of Charge II), in violation of Articles 120b and 128, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 920b, 928 (2018). The military judge sentenced Appellant to reduction to the grade of E-1, confinement for thirteen years and eight months, and a dishonorable discharge. The convening authority took no action. On April 4, 2023, the United States Army Court of Criminal Appeals (ACCA) summarily affirmed the findings and sentence. *United States v. Jones*, No. ARMY 20210503, 2023 CCA LEXIS 175, at \*1 (A. Ct. Crim. App. Apr. 4, 2023) (per curiam).

We granted review of the following issue:

> Whether the military judge committed prejudicial error by admitting Appellant's post incident browser history as res gestae evidence.

*United States v. Jones*, 83 M.J. 466 (C.A.A.F. 2023) (order granting review).

The parties disagree about whether Appellant's post-incident browser history was admitted as res gestae evidence or under some other theory,[1] and they disagree about whether the admission of the evidence was in error. Appellant contends that the military judge abused her discretion by admitting as res gestae what was essentially evidence of crimes, wrongs, or other acts, without following the requirements of Military Rules of Evidence (M.R.E.) 403 and

---

[1] The parties' disagreement may be attributable to the fact that the military judge expressed skepticism over both the Government's argument and the defense's response, but in overruling the defense objection, the military judge did not state the legal basis for the admission of the evidence on the record.

404(b). The Government counters that the military judge did not err at all because the evidence was properly admitted not as res gestae but as consciousness of guilt.

We need not resolve these disputes because even if we assume (without deciding) that the military judge abused her discretion in admitting the evidence, after applying the factors articulated in *United States v. Kohlbek*, 78 M.J. 326, 334 (C.A.A.F. 2019), we conclude that any error in this case did not materially prejudice Appellant's substantial rights. Therefore, we affirm the decision of the ACCA.

## I. Background

Appellant was best friends with SPC DJ[2] and frequently spent time at his house, watching over SPC DJ's young children and helping his thirteen-year-old sister, AG, with her homework. One afternoon in November 2020, Appellant was at SPC DJ's house with AG, who was babysitting and doing her homework. While the baby played on the floor nearby, Appellant leaned in and kissed AG. At some point, Appellant gave the baby a cell phone to distract her. Then he touched AG's groin with his tongue and put his hand on her neck and squeezed. She felt pressure in her eyes and ears but was unable to speak as she tried to pull his hand away. Appellant released his grip, pulled down his pants, and penetrated AG's vulva with his penis.

Appellant's neighbor, SD, walked into the room and saw Appellant kneeling on the bed with his pants down and AG lying on the bed in front of him. SD immediately went into the bathroom and vomited. Appellant "jumped up and pulled his pants up" and told AG he would be in trouble if anyone found out what had happened.

SD confronted Appellant later that day to clarify what she had seen. As Appellant began to explain, "When a man sees a woman," she terminated the conversation. Hours

---

[2] SPC DJ was a private first class at the time of the charged offenses and a specialist at the time of trial. Throughout this opinion we refer to him by his rank at the time of trial.

later, SD told SPC DJ and his wife what she had seen. Appellant admitted to SPC DJ that he had kissed AG.

At approximately 4:00 a.m. on November 5, Appellant was interviewed by Army Criminal Investigation Division (CID) Special Agent (SA) CW. After being advised of and waiving his Article 31(b), UCMJ, 10 U.S.C. § 831(b) (2018), rights, Appellant admitted that he kissed AG while helping her with her homework. He admitted that he touched her breasts and vagina with his hands and mouth, placed his unclothed genitals on her thigh, and choked her. He claimed that these acts were not only consensual but, for the most part, initiated by AG.

Appellant told SA CW that he was interrupted by SD's arrival. He described his own and AG's positions on the bed when SD walked in, including the fact that his pants were down and his genitals were on AG's thigh. He told the agent that SD swore and went into the bathroom, and later confronted Appellant. Appellant admitted to the agent that he knew AG was thirteen years old and he apologized for his actions.

About two hours into the nearly four-hour interview, Appellant provided written consent to a search of his cell phone for text messages. CID subsequently obtained search and seizure authorization to conduct a digital forensic examination of the cell phone for its internet search history. During an examination conducted on November 12, 2020, CID took screen shots of Appellant's November 4th and 5th browsing history. These screenshots, admitted into evidence over defense objection, show that on November 5, 2020, someone using Appellant's cell phone searched Google for "how many years for sexual assault," "choking charge," "Types of sexual assault," and "what is sextual [sic] assault."

During findings arguments, the Government argued that Appellant exploited SPC DJ's trust in order to sexually assault SPC DJ's sister, AG, knowing that AG was only thirteen and that Appellant's conduct was wrong. The Government urged the military judge to "look at the Google

history . . . and you will see looking up what is choking, sex assault. He knew what he did was wrong." The Government emphasized that AG's testimony was clear and credible; it was not inconsistent in any material way with her prior statements; and it was corroborated in significant part by SD's testimony and Appellant's admissions to CID.

The defense countered that AG's allegations were uncorroborated because SD did not witness any penetration and Appellant admitted to CID only that he kissed AG, nothing more. The defense argued that AG was the sole witness, and her testimony was not credible because she was an emotional child who had given nine different accounts of the alleged assault over the past year.

The defense did not address Appellant's internet search history during findings arguments, and neither party addressed it during sentencing arguments. Instead, the theme of the Government's presentencing argument was that Appellant took advantage of his friendship with SPC DJ to gain access to SPC DJ's young sister and exploited his trusted position as a family friend to assault her in her brother's home. The Government argued:

> We lock our doors at night to keep the bad guys out. What do you do when he has a key? From fairy tales to true crime, there has existed this concept of knowing evil when you see it. It's the monster in the woods, the man in the mask lurking in the shadows. This evil exists outside, but not in our own home. While tucking in our children at night, we check under the bed for monsters, showing them that they are safe in their house, that the evil is only outside.

> [Appellant] was the bad guy in plain sight, the wolf in sheep's clothing. . . .

> . . . .

> The monster was in the house the entire time, hiding in plain sight.

## II. Legal Standards

Under Article 59(a), UCMJ, a finding or sentence may be held incorrect as a matter of law only if the error

materially prejudiced a substantial right of the accused. 10 U.S.C. § 859(a) (2018). "Importantly, it is the Government that bears the burden of demonstrating that the admission of erroneous evidence is harmless." *United States v. Flesher*, 73 M.J. 303, 318 (C.A.A.F. 2014). "For nonconstitutional evidentiary errors, the test for prejudice 'is whether the error had a substantial influence on the findings.'" *Kohlbek*, 78 M.J. at 334 (quoting *United States v. Fetrow*, 76 M.J. 181, 187 (C.A.A.F. 2017)). "In conducting the prejudice analysis, this Court weighs: (1) the strength of the Government's case, (2) the strength of the defense case, (3) the materiality of the evidence in question, and (4) the quality of the evidence in question." *Id*. (citations omitted) (internal quotation marks omitted).[3]

## III. Analysis

Appellant argues that the Government leveraged the erroneous admission of his post-incident browser history to characterize him as a predator, resulting in his conviction and a sentence to a term of confinement nearly four years in excess of what the Government requested. We are unpersuaded. Applying the *Kohlbek* factors, we conclude that even assuming the military judge erred, the error did not substantially influence the findings or sentence.

### 1. The Strength of the Government's Case

The Government presented a strong case, consisting primarily of the victim's testimony, eyewitness testimony,

---

[3] Appellant asserts that this Court should adopt the test from *United States v. Perez-Tosta*, 36 F.3d 1552, 1562 (11th Cir. 1994), for prejudice when dealing with erroneous M.R.E. 404(b) evidence. However, we decline to do so because, as the Government persuasively argues, "The *Perez-Tosta* test is the 11th Circuit's attempt to 'discern three factors the court should consider in determining the reasonableness of pretrial notice under 404(b)' and not a test for prejudice of wrongly admitted evidence." Brief for Appellee at 11 n.6, *United States v. Jones*, No. 23-0188 (C.A.A.F. Oct. 16, 2023) (quoting *Perez-Tosta*, 36 F.3d at 1562). Instead, as noted above, this Court applies the test set forth in *Kohlbek* to ascertain prejudice in the wake of nonconstitutional evidentiary error. 78 M.J. at 334.

and Appellant's videotaped admissions. The victim, AG, was thirteen at the time of the offenses and fourteen at the time of trial. Her memory was clear and she described the events of November 4, 2020, in detail, providing evidence of the elements of the offenses. She also testified that SD walked in on the assault, and that Appellant said he would get into trouble if anyone found out about what he had done.

The Government's case was strengthened by the eyewitness testimony of SD, who corroborated significant details from AG's testimony. She described Appellant's and AG's positions on the bed, the condition of Appellant's clothing, her view of his bare buttocks, and her own visceral reaction to the scene she observed. She also testified about Appellant's response when she confronted him several hours later.

Finally, Appellant's videotaped November 5 statement to CID was admitted at trial and it further strengthened the Government's case. In the interview, Appellant denied any penetration,[4] but he admitted to kissing AG, pulling down his pants, placing his exposed genitals on AG's thigh, touching her breasts and vagina, and placing his hand on her neck, knowing she was thirteen years old, all while the baby played on the floor nearby.

### 2. The Strength of the Defense Case

The defense case was comparatively weak. The defense cross-examined AG about alleged inconsistencies between her testimony and the various statements she made to family, medical personnel, and law enforcement personnel in the days and weeks after November 4. Specifically, the defense questioned her about inconsistent accounts as to when Appellant entered the room where the alleged assault occurred; when Appellant gave the baby a cell

---

[4] Although Appellant denied penetrating AG's vulva with his penis, he conceded to CID that it was "possible" that penetration occurred while he was rubbing his penis on AG's inner thigh while he was focused on "making out" with her.

phone to distract her; whether AG objected to the kissing; whether Appellant touched various parts of her body; whether there was any penetration; and whether AG could speak when Appellant had his hand on her throat. Although her recollection of the charged offenses was clear, AG could not recall the details of every statement she later made. Therefore, she did not acknowledge the alleged inconsistencies and the defense did not succeed in impeaching her trial testimony. The defense did not call any witnesses.

In closing, the defense argued that AG was not credible because she was an emotional child who had made inconsistent statements about what transpired on November 4, 2020. In addition, the defense argued that AG's testimony was uncorroborated because SD did not witness any penetrative acts and Appellant admitted to CID only that he kissed AG.

As this Court has noted, "[i]nconsistencies . . . are not uncommon when child abuse victims testify" and " '[a]ny person who suffers from some type of traumatic experience, adult or child, may have difficulty relating that experience in a chronological, coherent and organized manner.' " *United States v. Cano*, 61 M.J. 74, 74 (C.A.A.F. 2005) (quoting *Paramore v. Filion*, 293 F. Supp. 2d 285, 292 (S.D.N.Y. 2003)). Nevertheless, AG was able to provide clear, detailed testimony about the offenses that was corroborated in significant part by SD's eyewitness testimony and Appellant's admissions to CID, which went far beyond admitting to a kiss. In light of the corroboration of key parts of AG's testimony, we are unconvinced that any inconsistencies in her testimony undermined the strength of the Government's case.

### 3. The Materiality and Quality of the Evidence in Question

Having considered the strength of the Government's case and the strength of the defense case, we turn to the final two factors of the prejudice analysis: the materiality and quality of the evidence in question. *Kohlbek*, 78 M.J. at

334. "In examining these factors, we essentially are as-sessing how much the erroneously admitted evidence may have affected the court-martial." *United States v. Washington*, 80 M.J. 106, 111 (C.A.A.F. 2020) (analyzing material-ity and quality together). In this case, we conclude that Ap-pellant did not suffer material prejudice to either the findings or sentence as a result of the admission of his post-incident browser history.

Appellant's post-incident internet browser history did not play a major role in the Government's case: it was ref-erenced only once in the Government's findings argument and not at all during sentencing. Moreover, Appellant's post-incident browser history did not provide the factfinder with any new information, because Appellant's searches for "sexual assault" and "choking charge" merely reflect the charges against him; they do not describe any conduct not already known to the factfinder. "When a 'fact was already obvious from . . . testimony at trial' and the evidence in question 'would not have provided any new ammunition,'" the erroneous admission of the evidence is likely to be harmless. *United States v. Harrow*, 65 M.J. 190, 200 (C.A.A.F. 2007) (alteration in original) (quoting *Cano*, 61 M.J. at 77-78). Furthermore, even assuming (without de-ciding) that his searches show consciousness of guilt, Ap-pellant's statement to AG about getting in trouble if anyone found out and his own damning admissions and apology to CID are more compelling evidence of consciousness of guilt than search terms that could just as easily reflect Appel-lant's attempt to understand the legal jeopardy he faced af-ter his CID interview.

Finally, we reject Appellant's contention that the Gov-ernment compounded the error in the admission of his post-incident browser history and adversely impacted his sentence[5] by calling Appellant "knowing evil" during presentencing. Viewed in the context of the Government's

---

[5] The military judge sentenced Appellant to thirteen years and eight months of confinement, nearly four years longer than the confinement sentence requested by the Government.

presentencing argument as a whole, which characterized Appellant as "a bad guy in plain sight," a "wolf in sheep's clothing," and the "monster [who] was in the house the entire time, hiding in plain sight," the Government's invocation of "knowing evil" refers only to Appellant's exploitation of his close relationship with the victim's family, not the screenshots of Appellant's post-incident internet searches.

## IV. Conclusion

Even if we assume (without deciding) that the military judge abused her discretion in admitting Appellant's post-incident browser history, after applying the *Kohlbek* factors, 78 M.J. at 334, we hold that there was no material prejudice to Appellant's substantial rights. Accordingly, we answer the granted issue in the negative.

The decision of the United States Army Court of Criminal Appeals is affirmed.